**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTHONY KRESSEL and
JENNIFER KRESSEL,

                    Plaintiffs,

            v.

NEWREZ LLC, doing business as
SHELLPOINT, and WILMINGTON
SAVINGS FUND SOCIETY, FSB, not in its
individual capacity but solely as Owner
Trustee of FIGRE Trust 2023-HE3,

                    Defendants.

Case No. 25 cv 5904

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Anthony and Jennifer Kressel believed they had found a way out of their financial troubles after their federal bankruptcy proceedings concluded. But, they now allege that Defendants Shellpoint and Wilmington Savings failed to honor the terms of an agreement they reached to alleviate their debt. They claim that Defendants are charging them almost double the amount of monthly payments than required by that agreement. Before the Court is Defendants' motion to dismiss for lack of standing and for failing to state plausible claims.[1] For the reasons stated below, Defendants' motion to dismiss [23] is granted in part and denied in part.

---

[1] Plaintiffs filed their original complaint on May 27, 2025. [1]. Defendants moved to dismiss the complaint on July 11, 2025. [19]. Plaintiffs filed the operative Amended Complaint on July 16, 2025. [22]. Defendants filed a second motion to dismiss, raising substantially the same arguments on July 29, 2025. [23]. The Parties proceeded to discuss only the second motion to dismiss in their briefs. As such, Defendants' original motion to dismiss [19] is stricken.

**Background**

Anthony and Jennifer Kressel obtained a line of credit from Figure Lending secured by a second mortgage on their home in Mokena, Illinois, on October 1, 2023. [22] ¶¶ 4, 15. They did so to help pay medical bills after Anthony became disabled. *Id.* ¶ 16. Both Anthony and Jennifer signed the mortgage, but only Jennifer signed the line of credit agreement. *Id.* ¶ 15.

Overwhelmed by financial difficulties, Plaintiffs eventually filed for Chapter 7 bankruptcy on November 25, 2024. *Id.* ¶ 17. Plaintiffs included the line of credit among their listed debts. *Id.* ¶ 18. When Plaintiffs filed for bankruptcy, Figure Lending still held the mortgage and serviced the loan. *Id.* ¶¶ 19, 20. However, on December 20, 2024, while the bankruptcy proceedings were in progress, Figure Lending transferred the servicing rights to NewRez LLC, doing business as Shellpoint (Shellpoint). *Id.* ¶ 21. Then, Figure Lending transferred the remaining rights under the mortgage and the credit agreement to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of FIGRE Trust 2023 (Wilmington) on January 9, 2025. *Id.* ¶ 22. According to Plaintiffs, the debt was treated as defaulted when the rights were transferred. *Id.* ¶ 25. On March 10, 2025, Plaintiffs were discharged from bankruptcy. *Id.* ¶ 33.

The current dispute is about a Reaffirmation Agreement that was part of the bankruptcy proceedings and signed by Jennifer on January 28, 2025, which was countersigned by a representative for "Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of FIGRE Trust 2023-HE3 as serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing" on February 24, 2025. *Id.* ¶ 27; [22-1] at 47. Under the Reaffirmation Agreement, Jennifer agreed to make 345 payments of $269.34 on the debt beginning in February 2025. [22] ¶ 31.

On January 27, 2025, Shellpoint began sending statements demanding a payment of $485.22/month. *Id.* ¶ 34. Jennifer did not make that payment and instead paid $269.34/month as specified in the Reaffirmation Agreement. *Id.* ¶ 35. Shellpoint treated Jennifer's payment of $269.34 as a partial payment and placed it in a suspended account until $485.22 was received, and then credited it as one payment. *Id.* ¶¶ 37, 38. Plaintiffs allege that this payment misallocation will result in them paying substantially more than they are required to under the Reaffirmation Agreement and that Defendants' lien on their home is more than it should be. *Id.* ¶¶ 39, 40.

On March 27, 2025, Shellpoint sent Jennifer a letter stating that the mortgage was one monthly payment of $485.22 past due. *Id.* ¶ 41. Then, Shellpoint informed Jennifer on April 10, 2025, that the Reaffirmation Agreement was not financially sound for Shellpoint, that Shellpoint would not honor the agreement, and that Plaintiffs should apply for a hardship review. *Id.* ¶ 42. Jennifer was further informed that she would be subject to negative credit reporting if Shellpoint did not receive the $485.22/month payments. *Id.* ¶ 44.

On April 18, 2025, Plaintiffs sent Shellpoint a qualified written request complaining that Shellpoint was demanding monthly payments above the amount required in the Reaffirmation Agreement and that Shellpoint was wrongfully allocating the payments. *Id.* ¶ 47. Shellpoint acknowledged receipt of the qualified written request on April 28, 2025, but as of July 14, 2025, Plaintiffs had not received a response. *Id.* ¶¶ 48, 49. On May 12, 2025, Shellpoint sent a notice to Jennifer that the loan was in default. *Id.* ¶ 51.

## Legal Standard

Defendants seek to dismiss the Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6). A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The plaintiff

bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). The Court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

In the Amended Complaint, Plaintiffs bring four claims against Defendants Shellpoint and Wilmington: (1) Fair Debt Collection Practices Act ("FDCPA") (against Shellpoint); (2) Breach of Contract (against both); (3) Real Estate Settlement Procedures Act ("RESPA") (against Shellpoint); and (4) Illinois Consumer Fraud Act ("ICFA") (against both). Defendants move to dismiss all claims brought by Anthony Kressel because he lacks standing. Defendants also seek to dismiss the claims in their entirety for failing to state a claim under Rule 12(b)(6).

### I.  Anthony Kressel and Standing

Turning to the question of whether Anthony has standing to bring each of the claims, Defendants first assert that Anthony is not a consumer under the FDCPA and therefore cannot bring those claims. On Count II, Defendants contend that Anthony lacks standing because he is not a party to the Reaffirmation Agreement. As to the RESPA claim, Defendants argue that Anthony lacks standing because he is not a borrower. Finally, on Count IV, Defendants assert that Anthony is not a consumer nor can he satisfy the consumer nexus test required to bring a claim under the ICFA.

#### A.  Count I: FDCPA

Defendants argue that Anthony lacks standing to bring a FDCPA claim because he is not a "consumer" as defined by the statute. [24] at 4–5. Plaintiffs respond that FDCPA provides recourse to "any person" and relief is not limited to consumers under the sections of the statute they are raising. [30] at 6–8. While some sections of the FDCPA only apply to consumers, others apply more broadly. "In enacting the FDCPA, Congress specified that a 'group of people who do not owe money, but who may be deliberately harassed are the family, employer and neighbors of the consumer. These people are also protected by this bill.'" *Todd v. Collecto, Inc.*, 731 F.3d 734, 737

(7th Cir. 2013) (quoting H.R.Rep. No. 95–131, at 8 (1977)). As stated by the Seventh Circuit, "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection[.]" *Id.* at 738. Generally, "only a person within a statutory provision's 'zone of interest' has standing to sue under it." *Id.* at 736 (quoting *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803 (7th Cir. 2007)).

In the Amended Complaint, Plaintiffs seek relief under Sections 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1). [22] ¶ 72. The Seventh Circuit has found that these sections are not limited to a specific class of individuals who are protected. *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (explaining that §§ 1692d, 1692e, and 1692f "do not designate any class of persons ... who can be abused, misled, etc., by debt collectors with impunity," and emphasizing the words "any person" in § 1692d). Contrary to Defendants' assertions, the Seventh Circuit has "stressed that § 1692d is not a protection just for consumers but for any person mistreated by a debt collector." *Todd*, 731 F.3d at 737. Likewise, under Section 1692f, the Seventh Circuit has found an individual has standing to sue "for his own injuries even though he is not the consumer[.]" *Id.* at 739.

Here, the Amended Complaint alleges that Anthony co-owns and resides in the home and signed the mortgage that Shellpoint threatened to foreclose, and which Plaintiffs allege subjected them to abusive debt collection practices. [22] ¶¶ 4, 5, 72. As the threatened actions would harm Anthony, it is plausible that Anthony is within the zone of interest protected by the statute. *See Koval v. Harris & Harris, Ltd.*, 2017 WL 1321152, at *2 (N.D. Ill. Apr. 5, 2017) (finding a guardian who provides care for a disabled person is comfortably within the zone).

Defendants also argue that Anthony lacks Article III standing. To establish Article III standing, a plaintiff must allege an actual harm caused by the debt collection statements, actions,

or lack thereof. *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021). The Seventh Circuit has held that a "FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). Here, Shellpoint threatened to foreclose on Anthony's home and requested payment of additional funds to prevent that, which is sufficient to allege an injury at this stage. For those reasons, Defendants' motion to dismiss Anthony's claim for Count I is denied.

### B. Count II: Breach of Contract

For Count II, Defendants contend that Anthony is not a party to the Reaffirmation Agreement and therefore lacks standing to sue for its breach. Plaintiffs respond that Anthony is a party to the contract because the credit agreement and mortgage were executed as part of the same transaction; thus, since the Reaffirmation Agreement modified some of the terms of that transaction, all three documents must be considered jointly as a single contract. [30] at 8.

As alleged, while Anthony did not sign the line of credit agreement or the Reaffirmation Agreement, he signed the mortgage that secured the debt for the line of credit. [22] ¶ 15. Illinois courts have found that when a note and corresponding mortgage are executed contemporaneously, they were intended to complement each other, therefore the mortgage was valid and enforceable against both spouses even though only one signed the note. *OneWest Bank FSB v. Cielak*, 2016 IL App (3d) 150224, ¶ 20. Here, these documents were executed together and intended to complement each other. This leaves the question of whether the Reaffirmation Agreement can be considered part of the original contract. Under Illinois law, when a contract is modified, the "modified contract is regarded as creating a new single contract consisting of so many of the terms of the prior contract as the parties have not agreed to change, in addition to the new terms on which they have agreed."

*Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 469 (2004). In our case, the Reaffirmation Agreement modified some, but not all, of the terms in the underlying line of credit and mortgage as part of the Plaintiffs' efforts to resolve their joint bankruptcy proceeding. Thus, the mortgage, bankruptcy, and Reaffirmation Agreement are all connected. "Furthermore, when a contract is modified or amended by a subsequent agreement, any lawsuit to enforce the [agreement] must be brought on the modified agreement and not on the original agreement." *Id.* Thus, a lawsuit for breach must be brought under the Reaffirmation Agreement. Therefore, at this stage, Plaintiffs adequately alleged Anthony's standing for Count II.

### C. Count III: RESPA

Under RESPA, defendants who fail "to comply with any provision of this section shall be liable to the borrower for each such failure[.]" 12 U.S.C. § 2605(f). Defendants contend that Anthony is not a borrower, so he lacks standing to bring a RESPA claim. RESPA does not define "borrower" in the statute, leaving courts to determine what Congress intended. Although not binding on this Court, the Sixth Circuit's decision in *Keen v. Helson*, 930 F.3d 799 (6th Cir. 2019) provides a persuasive analysis of the term. In *Keen*, the question presented to the court was the same as it is here: whether the plaintiff, who signed a mortgage but not the loan, had standing to sue under RESPA, which turned on whether she was a borrower. To begin, the Sixth Circuit reviewed the distinction between loans and mortgages—a loan is an agreement for the lender to provide a person money now that will be paid back later, while a mortgage is a separate document providing extra assurance to the lender that a person will repay them, or the lender will take the property that secured the loan. *Id.* at 802. "Intuitively, then, a 'borrower' is someone who has borrowed money from a lender and promised to pay it back. That means only people who are personally obligated under a loan—those who signed or assumed it—can be 'borrower[s]' under

RESPA." *Id.* This is consistent with the use of the term "borrower" throughout RESPA, where each time it refers "to a relationship with a lender under the terms of a loan." *Id.* at 804. "Conversely, signing a mortgage, or owning a home subject to one, does not make you a 'borrower'" because the person is not the one borrowing the funds. *Id.* at 802. Thus, the Sixth Circuit found that Tara Keen was not a "borrower" under the statute because she only signed the mortgage while Nathan Keen signed both the mortgage and the loan. *Id.* at 801, 806.

Anthony's position in this litigation is identical to that of Tara Keen—he signed the mortgage but not the line of credit. Further, the Amended Complaint does not allege that Anthony has any obligation to repay the debt on the line of credit. Thus, he is not a "borrower" under RESPA and lacks standing to sue on this claim. *See also Ank Bey El v. CitiMortgage, Inc.*, 2025 WL 3552702, at *12 (E.D.N.Y. Dec. 11, 2025) ("Signing a mortgage, or owning a home subject to a mortgage does not make an individual borrower under RESPA."); *Sharp v. Deutsche Bank Nat. Tr. Co.*, 2015 WL 4771291, at *6 (D.N.H. Aug. 11, 2015) (finding a plaintiff named as a borrower on a mortgage who does not allege that he also signed the loan or the promissory note was not a "borrower" under RESPA). Thus, Anthony's RESPA claim is dismissed.

### D. Count IV: ICFA

Defendants' last argument contesting Anthony's standing is that he is not a "consumer" under the ICFA and cannot satisfy the consumer nexus test. Plaintiffs' sole response to this argument is that they need not allege that Anthony is a consumer for him to have standing. While Plaintiffs are correct about the ability of a non-consumer to bring a claim, the Amended Complaint and their response brief fail to articulate that Anthony is within the necessary consumer nexus.

The ICFA prohibits "unfair or deceptive acts or practices, including ... fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact"

in the "conduct of any trade or commerce." 815 ILCS 505/2. However, the ICFA only governs "consumer transactions or those having a consumer nexus." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 595 (7th Cir. 2017) (citation omitted). The ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Plaintiffs do not argue that Anthony is a consumer under the statute, but rather that the statute is not limited to consumers.

While courts have allowed individuals who are not consumers to bring suits, they must allege a consumer nexus. To sufficiently plead a consumer nexus, a plaintiff must allege the defendant's conduct was of sufficient magnitude to be likely to affect the market generally "and thus be likely to harm consumers in the colloquial sense of the ultimate buyers of the finished product[.]" *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (citing *Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319 (2003)). For example, in *Williams Elecs. Games*, the Seventh Circuit found that allegations of increased costs passed on to the plaintiff's consumers were sufficient to form a consumer nexus. *Id.* But courts will dismiss claims when a party fails to allege that they were a consumer or a sufficient consumer nexus, as the court did in *RBG Plastics, LLC v. Sparkles Gift & Party Shop, Inc.*, 2025 WL 2764505, at *7 (N.D. Ill. Sept. 29, 2025). There, the plaintiff failed to allege that they were a consumer or that the defendant "made false and misleading statements of fact to consumers related to any aspect of their business to give rise to standing[.]" *Id.* So, the court dismissed the ICFA claim. *Id.* Here, Plaintiffs do not allege, nor do they argue, that a consumer nexus exists or that Defendants' conduct was of a magnitude to affect the market generally. Therefore, Anthony lacks standing to bring an ICFA claim.

## II.     Sufficiency of the Amended Complaint

Defendants' next argument is that all of Plaintiffs' claims should be dismissed for failing to state a plausible claim for relief. Specifically, Defendants contend that Shellpoint is not a "debt collector" under the FDCPA and, therefore, a claim cannot be brought against it. Next, Defendants assert that Plaintiffs failed to allege a breach of contract claim because Shellpoint is not a party to the Reaffirmation Agreement, and the Plaintiffs' damages allegations are insufficient. Third, Defendants argue that Plaintiffs' RESPA claim fails to allege an adverse action and plausibly plead damages. Finally, Defendants contend that the ICFA claim is insufficiently pled and redundant of the breach of contract claim.

### A.  Count I: FDCPA

"The Fair Debt Collection Practices Act generally prohibits 'debt collectors' from engaging in abusive, deceptive, or unfair debt-collection practices." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citing 15 U.S.C. § 1692 *et seq.*). For the FDCPA to apply, two threshold criteria must be met. Here, the parties dispute the first criteria, which requires that the "defendant must qualify as a 'debt collector,' which the FDCPA defines as any person who 'uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' or who 'regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Id.* (quoting 15 U.S.C. § 1692a(6)). Meaning the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

Defendants argue that Shellpoint is not a debt collector, so the statute does not apply. Plaintiffs respond that they were in bankruptcy when Shellpoint assumed the debt, and that the line

of credit contract and the mortgage indicate that bankruptcy is a basis for considering the loan to be in default. Thus, the question before the Court is whether the debt was in default when Shellpoint acquired it, making it a debt collector.

Plaintiffs allege that the loan was treated as defaulted, and the attached contracts indicate that if Plaintiffs declared bankruptcy, the loan could be treated as being in default. [22] ¶¶ 24, 25. When Plaintiffs filed for bankruptcy on November 25, 2024, the mortgage and credit agreement were held by Figure Lending. *Id.* ¶¶ 17, 19, 20. The servicing rights were transferred to Shellpoint on December 20, 2024, and the remaining rights were transferred to Wilmington on January 9, 2025. *Id.* ¶¶ 21, 22. According to the Amended Complaint, the filing of "a bankruptcy petition is (a) an act that may significantly affect the mortgagee's rights in the mortgaged property, and (b) results in the appointment of a trustee who has the powers of a judgment or lien creditor." *Id.* ¶ 24. Plaintiffs then alleged that the mortgage and credit agreement allowed for the debt to be treated as defaulted under certain conditions. *Id.* First, the mortgage provided that to protect the mortgagee's rights in the mortgage if "there is a legal proceeding that may significantly affect [its] rights in the Property (such as a proceeding in bankruptcy…)" then the mortgagee could do "anything necessary to protect the Property's value and [its] rights in the Property." [22-1] at 9. Later, when discussing acceleration and remedies, the mortgage states that Plaintiffs would be in default if, among other things, they took or failed "to take any action that adversely affects" the mortgagee's security or its rights in the Property. *Id.* at 11. While the credit agreement provides that Plaintiffs "will be in default of this Agreement if at any time: … (c) Your action or inaction adversely affects the Property or [the lender's] rights in the Property." [22-1] at 27.

As alleged by Plaintiffs, these provisions allowed the loan to be treated as defaulted if they filed for bankruptcy, as doing so would put the mortgagee's interest in the property at risk. As those

were the conditions when Shellpoint acquired the debt, Shellpoint treated the debt as defaulted when it was acquired, and it is a debt collector under the statute. Therefore, viewing the facts in the light most favorable to the Plaintiffs, these allegations are sufficient to plead that the debt was treated as defaulted when it was acquired by Shellpoint, making Shellpoint a debt collector under FDCPA. Thus, Plaintiffs' claims are sufficient to survive a motion to dismiss.

### B. Count II: Breach of Contract

Next, Defendants raise several arguments for why the breach of contract claim is insufficient. First, Defendants contend that Shellpoint is not a party to the Reaffirmation Agreement and cannot be liable for its breach. Second, Defendants argue Plaintiffs failed to allege actual damages because they continued to make payments, and their house is not in foreclosure. Third, Defendants assert that the Reaffirmation Agreement reaffirmed the full amount of the debt, so Plaintiffs' theory of the difference in the payment amounts being discharged in bankruptcy is incorrect. Plaintiffs respond that Shellpoint is a party to the Reaffirmation Agreement when it is considered in context with the mortgage and line of credit, that they have suffered and alleged actual damages, and that ambiguities must be construed against the drafter of the Reaffirmation Agreement.

Starting with the content of the Reaffirmation Agreement. It is a document created as part of Plaintiffs' bankruptcy proceeding. [22-1] at 44. According to the Amended Complaint, it "was drafted by counsel for Shellpoint." [22] ¶ 28. Then it was signed by a representative for "Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of FIGRE Trust 2023-HE3 as serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing" on February 24, 2025. *Id.* ¶ 27; [22-1] at 47. Like in other cases, at this stage of the litigation, these allegations are sufficient. For example, in *Bonfiglio v. Citifinancial Servicing, LLC*, the plaintiffs

sought to bring a breach of contract claim against a defendant that was not a party to the mortgage agreement. 2015 WL 5612194, at *7 (N.D. Ill. Sept. 23, 2015). The court found that the plaintiffs adequately alleged the defendant was obligated under the mortgage contract by a letter that could be viewed as a deferment agreement that modified the mortgage. *Id.* While there were questions about the letters provided by plaintiffs and the enforceability of the deferment agreement, the court found the allegations to be sufficient to survive a motion to dismiss. *Id.* Put another way, the court could not "say at this juncture that the [plaintiffs] cannot establish some sort of contract between themselves and [defendant] that would support a claim of breach." *Id.* Similarly, here, in the light most favorable to Plaintiffs, Shellpoint can be viewed as a party to the contract based on the signature to the contract referencing them, and Plaintiffs' allegations that Shellpoint drafted it.

As for the damages allegations, Plaintiffs allege damages in the amount of the difference between what Defendants are attempting to collect from them ($485.22/month) instead of the amount described in the Reaffirmation Agreement ($269.34/month), resulting in a total difference of $74,478.60. [22] ¶¶ 34–36, 59. Although Defendants argue that this amount is incorrect and that Plaintiffs are not entitled to those damages, such arguments are improper at this stage. While Defendants dispute Plaintiffs' interpretation of the Reaffirmation Agreement and its implications on the line of credit and mortgage, on a motion to dismiss, the Court must accept as true the allegations in the Amended Complaint. Further, the fact that Plaintiffs still owe money to Defendants under the line of credit does not mean they were not damaged. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 651 (7th Cir. 2015) (finding that although plaintiff continued to owe money under the loan, she adequately pled damages in the amounts of the new charges, which increased the total amount she had to pay). Here, while the Parties dispute how much

14

Plaintiffs should pay monthly to Defendants, the Amended Complaint sufficiently alleges damages to survive a motion to dismiss. Thus, Defendants' motion to dismiss Count II is denied.

### C.  Count III: RESPA

On Count III, Defendants argue that Plaintiffs failed to allege any adverse action was taken against them, as Shellpoint asserts that all its alleged conduct was routine and standardized. Defendants contend that the reinstatement letter sent to Plaintiffs, along with their treatment of the loan as being in default, the misallocation of payments, and Shellpoint's failure to respond to the qualified written request were not adverse actions because they were routine. Defendants also argue that Plaintiffs failed to plead actual damages and the existence of a pattern or practice. In response, Plaintiffs argue that Defendants' interpretation of what counts as an action under RESPA is too narrow, as the statute states "any action," and that their allegations of emotional damages are sufficient under RESPA. Plaintiffs also contend that they did not have to allege the specific facts in the cases they cited for a pattern and practice and that, regardless, the only relevant fact was Defendants' failure to respond to their qualified written request. To evaluate these arguments, it is necessary to fully understand the RESPA statute.

RESPA "is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018). "Section 2605(e) imposes duties on a loan servicer that receives a 'qualified written request' for information from a borrower." *Id.* "Section 2605(e)(2) requires the servicer to do one of the following three things no later than 30 business days after receiving a qualified written request from a borrower: (1) make appropriate corrections to the borrower's account and provide written notice of the corrections to the borrower; (2) after investigating the borrower's account, provide a written

explanation as to why the servicer believes the account does not need correction; or (3) after investigating the borrower's account, provide the requested information or explain in writing why the information cannot be obtained." *Id.* The loan servicer must also do one of these things "before taking any action with respect to the inquiry of the borrower[.]" 12 U.S.C. § 2605(e)(2).

Here, Plaintiffs allege both that Defendants failed to respond and that they took adverse actions against them. According to the Amended Complaint, on April 18, 2025, Plaintiffs sent Shellpoint "a qualified written request / notice of error complaining that Shellpoint was demanding monthly payments in excess of that provided for in the reaffirmation agreement and wrongfully allocating the payments that were made." [22] ¶ 47. Then on "April 28, 2025, Shellpoint acknowledged that it had received the qualified written request[;]" however, as of "July 14, 2025 Shellpoint had not substantively responded to Plaintiffs' qualified written request." *Id.* ¶¶ 48, 49. As this is more than 30 business days after Shellpoint's receipt of Plaintiffs' qualified written request, Plaintiffs adequately alleged that Shellpoint failed to timely respond.

Plaintiffs then allege that after they sent and Shellpoint received their qualified written request, on May 12, 2025, Shellpoint sent Jennifer a notice "that Plaintiffs' loan was in default, giving the 'amount needed to reinstate your account,' and stating that '[t]his reinstatement quote does not stop foreclosure proceedings or prevent a foreclosure sale from being held. To ensure a foreclosure sale has not been held, you should contact Shellpoint Mortgage Servicing before sending funds to reinstate your mortgage.'" *Id.* ¶ 51. Defendants argue that this notice and the account statements sent to Plaintiffs are not adverse actions because they were routine automated notices.

In support of this argument, Defendants point to a single unpublished out-of-circuit district court case. *See* [24] at 12–13; [32] at 6–7; *Cardiello v. The Money Store, Inc.*, 2001 WL 604007,

at *1 (S.D.N.Y. June 1, 2001). However, the reading employed by that court is unsupported by the plain text of the statute. RESPA states that servicers may not take "any action[.]" 12 U.S.C. § 2605(e)(2). The term "any" is by its nature "broad language," which defeats Shellpoint's narrow reading of what actions should be considered. *Hammond Power Sols., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 142 F.4th 945, 950 (7th Cir. 2025) ("That broad language—especially the phrase 'any form'—defeats Hammond Power's ambiguity argument."). Particularly at the motion to dismiss stage, where the allegations are read in the light most favorable to the plaintiffs, there is no basis to conclude that all the alleged conduct was routine or that such conduct is outside the scope of the statute. Nor is there a basis to allow, on a motion to dismiss, Shellpoint's sweeping declaration that all its conduct was standard and automated and thus should not be considered "any action" under RESPA. Moreover, the letter Plaintiffs quote in the Amended Complaint was not a standard monthly loan balance statement, but a letter directly related to Shellpoint's claim that Plaintiff's mortgage payment was past due and that it had to be reinstated. [22] ¶ 51; [22-1] at 76.

As to Defendants' arguments that the damages allegations are insufficient, the Seventh Circuit has held that "emotional distress can support a claim for damages under RESPA." *Moore*, 908 F.3d at 1060. Plaintiffs allege they "suffered aggravation and distress" from actions Shellpoint took before responding to their qualified written request and the repeated threats of unfounded foreclosure. [22] ¶¶ 84, 85. Further, Plaintiffs allege that they "were forced to expend time and money because of Shellpoint's noncompliance." *Id.* ¶ 85. Such alleged losses are sufficient to state a claim. *See Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001) ("The court concludes that Johnstone has stated a claim to recover for time spent on this case and her inconvenience, insofar as she can establish actual pecuniary loss."). Further, as to statutory damages, it is enough for Plaintiffs to plead claims and enough facts from which they will receive

"the benefit of imagination[.]" *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order."). Courts have found that it is sufficient for a plaintiff to seek statutory damages at the motion to dismiss stage and that proof of those damages comes later. *See Burke v. Nationstar Mortg., LLC*, 2022 WL 888811, at *11 (N.D. Ill. Mar. 25, 2022) (finding it was enough for plaintiffs to plead that they seek statutory damages in addition to actual damages without having to allege proof of the pattern or practice). Therefore, Plaintiffs have sufficiently met the "bare minimum requirement" to allege damages for their RESPA claim, even if those allegations may not withstand summary judgment in the future. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590 (7th Cir. 2016). Thus, Defendants' motion to dismiss Count III is denied.

### D. Count IV: ICFA

Finally, in their opening brief, Defendants made several arguments as to why Plaintiffs insufficiently pled their ICFA claim. They argue that Plaintiffs must allege the ICFA claim under the heightened pleadings standard for fraud, that Plaintiffs failed to allege an unfairness claim, that the claims are merely breach of contract claims, and that Plaintiffs failed to plead actual damages. Plaintiffs assert that their allegations were sufficient as they alleged that Defendants were threatening foreclosure as an attempt at extortion and that the Defendants entered into the contract deceptively. However, in reply, Defendants only argued that the ICFA claim is redundant of the breach of contract claim. [32] at 6.

A plaintiff can recover under the ICFA for either unfair or deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "The elements of a claim under the ICFA are: '(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice

occurred during a course of conduct involving trade or commerce.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)). A complaint must allege "facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 584 (Ill. 1996). However, whether a notice is deceptive under the ICFA is a matter of fact to be decided by the trier of fact. *See Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 66 (Ill. 1991).

For unfairness, there are three considerations Illinois courts look for: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson*, 775 N.E.2d at 961). "A court may find unfairness even if the claim does not satisfy all three criteria." *Id.* Claims for unfairness only need to meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). *Id.* at 670.

Here, Plaintiffs allege that Defendants "engaged in unfair and deceptive acts and practices" by: (1) "Demanding payment of sums in excess of those specified in the reaffirmation agreement," (2) "Allocating payments as if required payments were in excess of those specified in the reaffirmation agreement," (3) "Demanding payment of sums discharged in bankruptcy," (4) "Threatening Plaintiffs with harmful consequences if they did not pay," (5) "Subjecting Plaintiffs' property to a lien for an amount greatly in excess of that to which Defendant is entitled," and (6) "Ignoring Plaintiffs' attempts to resolve the matter by submitting a notice of error/ qualified written request." [22] ¶ 88. These allegations are like those the Seventh Circuit found to be sufficient to plausibly allege a claim for an ICFA violation in *Wigod*, where the plaintiff alleged the defendant's

19

"misrepresentation and concealment of material facts constituted deceptive business practices" and that it "dishonestly and ineffectually" implemented the program, "and that this conduct constituted unfair, immoral, unscrupulous business practices." 673 F.3d at 574 (internal quotations omitted). The Seventh Circuit found these allegations to be sufficient to plausibly allege a claim under the ICFA. Similarly, the court in *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, found that allegations that defendants were deceptive when attempting to collect a debt to which it had no legal claim, that the defendant intended plaintiff's reliance on the deception, and that the deception occurred during a course of conduct involving trade or commerce were all sufficient to withstand a motion to dismiss. 2015 WL 8780579, at *5 (N.D. Ill. Dec. 15, 2015). As in those cases, Plaintiffs in this case have put forward a plausible claim that Defendants engaged in deceptive and unfair practices by demanding payment in excess of the amount in the reaffirmation agreement, improperly allocating payments in excess of the amount in the reaffirmation agreement, demanding sums that were discharged in bankruptcy, threatening Plaintiffs if they did not pay, subjecting Plaintiffs' property to an excess lien, and ignoring Plaintiffs' attempts to resolve the matter. [22] ¶ 88. This is sufficient to plead an ICFA claim.

While Defendants argue that Plaintiffs' ICFA claims are redundant of their breach of contract claims, that is simply Defendants' view of the claim. Defendants provide no support for their argument as to why a claim they view as redundant should be dismissed at this stage, when Plaintiffs have alleged deceptive and unfair practices. If, after discovery, Plaintiffs are only making a breach of contract claim, such that Plaintiffs cannot establish the elements under the ICFA, then such arguments can be raised later. But at this time, particularly given that Shellpoint argues that it cannot be sued for breach of contract, the claims are not redundant.

Finally, Defendants argue that Plaintiffs failed to plead actual damages. [24] at 11–12. Under the ICFA, a plaintiff must allege "actual damages" from economic injuries and not emotional damages. The Seventh Circuit found sufficient "allegations that she incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification." *Wigod*, 673 F.3d at 575. As discussed above, Plaintiffs allege threats of foreclosure and demands for payments of amounts not due. [22] ¶ 88. These allegations are plausible and thus sufficient at this stage. Considering the stage of litigation—a motion to dismiss is to judge the sufficiency of the complaint, not its merits—here Plaintiffs have done that, even if just barely. *Windy City Metal*, 536 F.3d at 672. Further, to the extent that Defendants made additional arguments about the failure to plead, they are waived by their failure to address Plaintiffs' arguments in their reply. *Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."); *Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up).

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [23] is granted in part and denied in part. Anthony Kressel's claims under RESPA (Count III) and ICFA (Count IV) are dismissed because he lacks standing. Defendants' motion is otherwise denied. Defendants' original motion to dismiss [19] is stricken.

**SO ORDERED.**

Dated:  January 28, 2026

_____
Sunil R. Harjani
United States District Judge